UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA MARIE HARBERT,

     Petitioner,               Case Number 2:20-CV-13167

v.                          HONORABLE DENISE PAGE HOOD

JEREMY HOWARD,

     Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Tina Marie Harbert, ("Petitioner"), on parole supervision with the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In her *pro se* application, petitioner challenges her conviction for two counts of first-degree child abuse, M.C.L.A. 750.136(b)(2).  For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted by a jury in the Jackson County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to

28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir.

2009):

> In November 2015, Harbert's children, CH and JH, were admitted
> to the Allegiance Health emergency department for injuries
> caused by child abuse. The most significant injuries were to the
> children's buttocks. CH's buttocks were misshapen, appeared
> abnormal, and were swollen because of repetitive trauma. JH's
> injuries were more severe. The emergency room physician
> explained that JH had large, open, and weeping wounds across
> the entire length of his buttocks. He added that "the skin was
> pretty much absent from an area of his buttocks and just the fatty
> tissue underneath was there and kind of weeping." The physician
> explained that JH's wounds were "significantly painful" and would
> affect a person's ability to sit or walk. In fact, at the hospital, JH
> did not want to sit because of the injuries. JH was admitted to the
> hospital, and was not discharged until over a week later because
> of the severity of his injuries. Moreover, the record reflects that,
> even a month later, the wound was still open and his buttocks
> were still misshapen. CH's buttocks also remained misshapen a
> month after the initial hospital visit. In addition to the injuries to
> their buttocks, both children had scars. CH had a scar on the
> back of his hand by his knuckle and irregularly shaped scars on
> his right shoulder and abdomen, which he attributed to being
> struck by a dog leash by his father. JH also had scars on his back
> and his right arm had an infected wound.
>
> Both CH and JH testified that their injuries and scars were
> primarily caused by James Harbert, their father, who would
> repeatedly hit them with a 2x4 piece of wood, a dog leash, and
> his fists.[1]  The children described how the injuries caused by the
> beatings made them bleed to the point where their clothing would
> stick to their skin. JH testified that he was forced to wear diapers

---

[1] James Harbert was tried jointly with Harbert before a separate jury. Midway through
JH's testimony, he pleaded guilty to two counts of first-degree child abuse. This Court
denied his application for delayed leave to appeal his sentence. *People v. Harbert*,
unpublished order of the Court of Appeals, entered June 26, 2018 (Docket No. 343511).
Our Supreme Court also denied his application for leave to appeal. *People v. Harbert*,
919 N.W.2d 773 (2018)(Footnote original).

because the bleeding would seep through his underpants. JH added that he was unable to sleep on his back because it hurt, and he explained he walked differently because of the injuries. Similarly, CH testified that he was in a tremendous amount of pain and that he could not sit down or walk normally. CH recounted that the abuse in his parents' home was so bad that he tried to kill himself with a dog leash because he "couldn't take the pain anymore." When he told Harbert of the attempt, she said only that "she was glad" that he did not die.

Both children testified that their father would choke them until they passed out or got dizzy, and they described how sometimes they were deprived of food for days at a time or were made to sleep in the dog kennels in the basement. They testified that Harbert was aware that they were deprived food, and JH told the jury about one time when she snuck him a piece of pizza.

CH and JH testified that their mother witnessed them being beaten by their father and that she would also hit them with a 2x4 board. JH testified that when Harbert struck him it was not as bad as when his father would hit him, and he described it "like maybe a crack or something." CH testified that Harbert hit him with a lot less force than his father did. Additionally, however, they both testified that Harbert would bandage their injuries when she could and would provide them with painkillers. The record reflects that, despite knowing that CH attempted to commit suicide, Harbert never sought out mental health treatment for him. Additionally, although she was aware that the children were being beaten by her husband—and although she was hitting them with a board and bandaging their bleeding buttocks— Harbert never sought out medical treatment for the children. Indeed, she admitted to the police that she had spanked JH with a board in the morning on the day he was removed by Child Protective Services (CPS).

At trial, the defense theory was that Harbert was a victim of James Harbert and that her actions and her failure to protect the children from her husband did not amount to first-degree child abuse. After deliberation, however, the jury convicted her as charged.

*People v. Harbert*, No. 341471, 2019 WL 847926, at *1–2 (Mich. Ct. App. Feb. 21, 2019); *lv. den.* 504 Mich. 958, 932 N.W.2d 623 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the evidence was insufficient to convict, (2) petitioner was deprived of a fair trial because of prosecutorial misconduct; alternatively, trial counsel was ineffective for failing to object, (3) petitioner's statement to the police should have been suppressed because she was not given *Miranda* warnings prior to being subjected to custodial interrogation.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The Michigan Court of Appeals reviewed and rejected the majority of petitioner's prosecutorial misconduct claims under a plain error standard because petitioner failed to preserve the issues as constitutional claims at the trial court. The AEDPA deference applies to a plain-error analysis of a

procedurally defaulted claim. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).[2]

### III. Discussion

**A. Claim # 1.  The legal insufficiency claim.**

Petitioner first claims that the evidence was insufficient to convict her as an aider and abettor to her husband, claiming that she did not intend for her children to receive these types of injuries, nor did she inflict them.

The Supreme Court has indicated that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a

---

[2] Respondent urges this Court to deny these claims on the ground that they are procedurally defaulted because petitioner failed to object at trial.  Petitioner argues that counsel was ineffective for failing to object.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's adjudication of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

"A person is guilty of child abuse in the first-degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Mich. Comp. Laws § 750.136b(2).  Under Michigan law, first-degree child abuse is a specific intent crime. *See Galvan v. Stewart*, 705 F. App'x 392, 398 (6th Cir. 2017)(citing *People v. Maynor,* 470 Mich. 289, 295; 683 N.W.2d 565 (2004)). Physical harm is defined under Michigan's child abuse statute as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." M.C.L.A. 750.136b(1)(f). "'Serious mental harm' means an injury to a child's mental condition or welfare that is not necessarily permanent but results in visibly demonstrable manifestations of a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." M.C.L.A. 750.136b(1)(g).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *People v. Carines*, 460 Mich. 750, 757-58, 597 N.W.2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N.W.2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton,* 196 Mich. App. 341, 352; 492 N.W.2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N.W.2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance

9

to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N.W.2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N.W.2d 658 (1999); *Fuller v. Anderson*, 662 F.2d at 424.  "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt.  In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. 746, 754 (E.D. Mich. 2006)(internal citation omitted). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal.  Such acts may be silent and may not be overt but

10

may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002).  Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner aided and abetted in the crimes of first-degree child abuse.

As recounted by the Michigan Court of Appeals, the two children here suffered extensive physical abuse at the hands of petitioner's husband.  The children were repeatedly beaten with dog leashes, the husband's fists, and a 2x4 board.  The beatings left the children's buttocks bleeding, swollen, and damaged to the point where the injuries inflicted had still not healed a month after the children's removal from the parental home. Petitioner's husband also choked the boys to the point of unconsciousness and denied them food for days at a time. The older child attempted to commit suicide by hanging himself with a dog leash. His brother intervened to save his life. After removal from the home, both boys showed signs of mental trauma caused by the abuse which manifested in behavioral problems in their maternal uncle's home. The children required therapy, and, at trial, one of the boys expressed

an ongoing concern that his buttocks were still misshapen. The abuse had been taking place for as long as the children could remember and it occurred multiple times per week. *People v. Harbert*, 2019 WL 847926, at *3.

The Michigan Court of Appeals further concluded that there was sufficient evidence to support the jury's finding that petitioner aided and abetted in the offenses and was not merely present:

> [T]here was sufficient evidence to support a finding that she knew how severely the children were injured. They testified that they were beaten multiple times a week and that the abuse had been going on for as long as they could remember. Again, the beatings left their buttocks swollen, bleeding, and misshapen, and they were in so much pain that they could not sit or walk properly. Harbert witnessed the beatings by her husband and also spanked the children with a board. She bandaged their injuries, was told that they were in pain, and sometimes gave them pain medication. Given the extent of the injuries, a jury could—and did—infer that she intended her husband to commit the crime of first-degree child abuse against both of her children at the time she provided aid. Furthermore, given that she directly provided aid to her husband in his abuse of the children, such as concealing the children's injuries, declining to seek medical attention, and actively participating in striking them with a 2x4 board, it cannot reasonably be argued that she was merely present when her husband was committing the crime. Instead, the evidence leads to the reasonable inference that Harbert and her husband were acting in concert when disciplining the children. Consequently, viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence to support both convictions under an aiding and abetting theory.

*People v. Harbert*, 2019 WL 847926, at *5.

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief.  The evidence here indicated that petitioner and her husband had an extensive history of joint abuse of the children.  Petitioner left the children to be physically abused by her husband with the knowledge that he had severely abused them in the past.  She did nothing to intervene with her husband to prevent any further abuse, while being aware of the extent of the children's injuries.  As mentioned above, petitioner herself inflicted serious injuries on the children.  This evidence was sufficient for a rational trier of fact to conclude that petitioner aided and abetted in the abuse of her children, so as to be guilty of first-degree child abuse. *See Galvan v. Stewart*, 705 F. App'x at 401.  Petitioner is not entitled to relief on her first claim.

### B. Claim # 2.  The prosecutorial misconduct claims.

Petitioner claims she was denied a fair trial because of prosecutorial misconduct. In the alternative, petitioner argues that trial counsel was ineffective for failing to object to the majority of these alleged incidents of misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's

constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first argues that the prosecutor misstated the law during closing argument when she argued that petitioner was guilty because she failed to protect her children. Petitioner's trial counsel objected, because Michigan law did not allow for a conviction of first-degree child abuse merely for the failure to protect children from harm. The judge cautioned the jurors that he would provide instructions on the law and the prosecutor also urged the jury to follow the judge's instructions on the law. (ECF No. 8-14, PageID.1022-24). The judge later instructed the jurors that the lawyer's

14

arguments were not evidence and they were to follow the law as given to them by the judge. (*Id.*, PageID.1030). The judge later gave the jurors the correct instruction on the elements of first-degree child abuse and aiding and abetting. (*Id.*, PageID.1035-38). *see also People v. Harbert*, 2019 WL 847926, at *6. Assuming that the prosecutor's comments somehow mischaracterized the law, petitioner would not be entitled to habeas relief in light of the fact that the judge gave the jurors the correct instruction on the elements of the crime as well as instructing the jurors that the arguments and statements of the attorneys were not evidence. *See e.g. Clarke v. Warren*, 556 F. App'x 396, 405-06 (6th Cir. 2014).

Petitioner next claims that the prosecutor made several remarks that improperly appealed to the sympathies of the jurors. This portion of petitioner's prosecutorial misconduct claim is defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (ECF No. 8-14, PageID.1028). *See Cockream v. Jones,* 382 F. App'x 479, 486 (6th Cir. 2010). Finally, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187

F. Supp. 2d 852, 875-76 (E.D. Mich. 2002)(citing *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000)).

Petitioner claims the following prosecutorial remarks were improper:

But, [Harbert] chose to leave at least one child at home all the time, and why is that? Because they needed someone to stay home and run the dog business in the basement. *As a mother, I just cannot imagine hitting my child with a board. I can't imagine hitting my child with a board on top of an injury like this. The instinct to protect your children as a parent is just that, it's an instinct. It should come naturally. It should be just like breathing or your heart beating. It essentially becomes part of who you are as a person when you become a parent.*

Can you imagine a 10 year old boy coming to you and saying, "I tried to hang myself with a dog leash," and your response is, "Well, I'm glad you're alive?" She did nothing. She didn't get him any help. And that didn't even appear to be an eye opener for her, if anything was, or should have been an eye opener, that wasn't, to say this has gone too far, [James Harbert] and I need to stop. She's their mom. *She's supposed to be the safe place for them to fall and she was nothing but cold, hard concrete. It is her job to protect those boys.*

*People v. Harbert*, 2019 WL 847926, at *7. (Emphasis original).

The Michigan Court of Appeals rejected this claim, finding that the prosecutor's comments were a fair argument on the evidence presented and were also responsive to the defense theory that petitioner herself was a victim of her husband's abuse who had wanted to protect her children but did not have the courage or support to do so. *Id.*, at *8.

Courts recognize that the "prosecution has "wide latitude" during closing arguments to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009). The prosecutor's remarks were a proper response to the defense theory that petitioner herself was a victim who had wanted to help her children.

Petitioner next contends that the prosecutor committed misconduct by arguing that she had assisted her husband with the abuse by lying to the police, to Child Protective Services, and to medical personnel at the hospital. The prosecutor also argued that petitioner had lied to a detective in 2015 when she told him the children had never been punched or choked. *People v. Harbert*, 2019 WL 847926, at *8. The Michigan Court of Appeals rejected this claim, because it was based on the evidence presented at trial, which supported a reasonable inference that petitioner was lying to protect her husband. *Id.* A prosecutor may argue that a defendant is lying during her closing argument, so long as the comments "reflect reasonable inferences from the evidence adduced at trial." *West v. Bell*, 550 F.3d 542, 565–66 (6th Cir. 2008). The prosecutor's comments were proper because they were based on reasonable inferences from the evidence.

Petitioner also argues that the prosecutor improperly argued that she had, but did not take, "multiple opportunities to get herself and the kids" away

from her husband. The Michigan Court of Appeals rejected this claim, because the "argument was appropriately based on the evidence presented[.]" *People v. Harbert*, 2019 WL 847926, at *8. The Michigan Court of Appeals' holding was correct, precluding relief.

Petitioner next contends that it was improper for the prosecutor to argue during her rebuttal that there was no evidence of domestic violence against petitioner by her husband other than the children's belief that petitioner was also hit by the father. The Michigan Court of Appeals rejected this claim, finding it to be responsive to the testimony at trial and to the defense argument that petitioner was a victim. *People v. Harbert*, 2019 WL 847926, at *8. This finding is reasonable, precluding relief.

Finally, petitioner claims that the prosecutor engaged in an improper civic duty argument with the following remarks:

> [Harbert] is not the victim here. We weren't looking at pictures of her injuries on the big screen. This is really all for [CH] and [JH] right now. It is sad to me that no one came forward to advocate for [CH] and [JH] when they were in this situation. No one really did much to stop what was going on. Now that job is handed off to you, you are their advocate. It is time for [Harbert] to be accountable for the hell and the horrors that the boys went through.

> *People v. Harbert*, 2019 WL 847926, at *9.

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the

jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F.3d 486, 539 (6th Cir. 2000)(quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)).  In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in the jury, thus defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 F. App'x 689, 701 (6th Cir. 2006).  Petitioner's civic duty argument claim would also be defeated by the fact that the trial court judge instructed the jury that they were not to let sympathy or prejudice influence their decision. *Cameron v. Pitcher*, No. 99-CV-74906-DT, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001).

Petitioner also claims that trial counsel was ineffective for failing to object to the prosecutorial misconduct.

A defendant must satisfy two things to establish the denial of the effective assistance of counsel.  First, the defendant must demonstrate that his or her attorney's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice,

19

the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). The prosecutor's comments did not deprive petitioner of a fundamentally fair trial; petitioner is unable to establish that she was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).  Petitioner is not entitled to relief on her second claim.

### C. Claim # 3.  The *Miranda* claim.

Petitioner lastly claims that her statement to the police should have been suppressed because she was not given her *Miranda* warnings prior to making her statement, while she was seated in the backseat of a police vehicle parked in her driveway when she made the statement.

Petitioner brought a pre-trial motion to suppress the statement.  The trial court granted the motion.  The prosecutor filed an interlocutory appeal

20

with the Michigan Court of Appeals.  The Michigan Court of Appeals reversed the trial judge's decision and held the statement to be admissible. The Michigan Court of Appeals concluded from the totality of the circumstances that petitioner was not "in custody" at the time she made the challenged statements.  Although petitioner was in the back of a locked police car, the car remained parked in petitioner's own driveway at the time of the interview. Detective Reed sat in the front seat of the car during the entire interview. Petitioner was not left in the car with no way to get out, if she had at any time indicated that she wished to exit the car.  At the time of her interview, petitioner witnessed her husband being handcuffed, arrested, removed from the house, and driven away in the back of a police car.  In contrast to the way her husband was treated, petitioner was neither handcuffed nor told she was under arrest. She was also asked whether she would consent to accompanying Detective Reed to his car.  Detective Reed told petitioner that he wanted to conduct the interview in the car simply because it contained recording equipment.  Petitioner voluntarily accompanied Detective Reed to the car. *People v. Harbert*, 2017 WL 252244, at *3.  Further, although Detective Reed never expressly advised petitioner that she could end the interview at any time or that she was free to leave the interview at any time, he did tell her that her participation was "voluntary." *Id.* at *4.

21

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

1. the person must be warned that he has a right to remain silent;

2. that any statement he does make may be used against him;

3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.

Police officers are not required to administer *Miranda* warnings to every person whom they question, nor are officers required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977).  Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him or her 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F.3d 604, 632 (6th Cir. 2003).

22

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

The Michigan Court of Appeals' determination that petitioner was not subjected to custodial interrogation, so as to require the giving of *Miranda* warnings, was reasonable, precluding habeas relief. "Detention in a police car does not automatically constitute an arrest." *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir.1996)(internal citations omitted). Petitioner voluntarily agreed to sit in the back of the police car and speak with Detective Reed. Although the back seat doors of the car could not be opened from the inside, which is standard in many police cars, there is no evidence indicating that petitioner was coerced to sit in the car or to speak with the detective, or that she asked to leave the car and was denied that request. Petitioner voluntarily agreed to speak with Detective Reed. Petitioner was not "in custody," and Detective Reed was not required to advise her of her *Miranda* rights. *See Knight v. Withrow*, No. 98-CV-74212-DT, 2000 WL 652941, at *7 (E.D. Mich. May 2, 2000). Under the circumstances, the Michigan Court of

Appeals reasonably concluded that petitioner was not subjected to custodial interrogation. *See United States v. Hoeffener*, 950 F.3d 1037, 1046 (8th Cir. 2020).  Although the defendant in the *Hoeffener* case was placed in the front seat of the police vehicle as opposed to the back seat, the rest of the Eighth Circuit's analysis is on point in this case.  Other cases involving a defendant being questioned in the backseat of a police vehicle have concluded that the interrogation was not custodial and *Miranda* warnings were not required. *United States v. Murray*, 89 F.3d 459, 462 (7th Cir. 1996)("the fact that Murray was questioned while seated in the back of the squad car did not put him "in custody" for purposes of *Miranda* warnings." "Once the police announced that Murray was under arrest and he was put in handcuffs, he was "in custody" for purposes of *Miranda*. His statements prior to that time were correctly found to be admissible during the trial"). Petitioner is not entitled to relief on her third claim.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a

24

COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[3]

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *Id*., at 484.

Although the Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a). "Good faith" requires

---

[3] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id*.

Accordingly, the Court SUMMARILY DISMISSES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability. The Court GRANTS petitioner leave to appeal *in forma pauperis*.

**IT IS SO ORDERED**.

s/Denise Page Hood
Denise Page Hood
Dated:  November 20, 2023        United States District Judge